The Honorable Mike Burris State Representative 2911 Dyer Street Malvern, Arkansas 72104-6118
Dear Representative Burris:
I am writing in response to your request for an opinion on six questions regarding the rights of members and participants in the Hot Spring County Solid Waste Authority ("SWA"), which was created under A.C.A. §§ 14-233-101
to-122 (Repl. 1998 and Supp. 2005). By way of background information, you state the following:
The SWA currently has three (3) members. The three (3) members are Donaldson, a municipality; Friendship, a municipality; and Hot Spring County, an Arkansas county. The SWA is funded by member contributions from a one (1) cent county sales tax. The SWA has an extensive financial operation that includes nine (9) transfer stations, an office, numerous trucks, and various equipment. Each month Donaldson and Friendship distribute ninety-eight percent (98%) of their part of the county sales tax to support the operation of the SWA. These payments are made to the Hot Spring County Treasurer for the benefit of the SWA account.
Recent litigation has resulted in a ruling that all funds in excess of that required for SWA operations are considered excess and can be used for general purposes.
At this time over three (3) million dollars has been determined to be excess by the trial judge, that decision has been upheld on appeal by the SWA, and the Arkansas Court of Appeals has denied a petition for rehearing. For additional background, copies of the SWA charter, the ordinance establishing the sales tax and the judge's two (2) decisions regarding the SWA funding and excess are attached. In addition, it should be noted that the county receives a per-capita distribution of sales tax funds for the unincorporated areas of Hot Springs County and the remainder is distributed to the municipalities that exist in Hot Springs County. The other municipalities in Hot Spring County either have their own solid waste plan such as door-to-door pickup, or have other arrangements with the SWA other than by membership. Specifically, the municipalities of Midway and Magnet Cove also pay ninety-eight percent (98%) of their revenue and their citizens use the SWA's facilities. Magnet Cove and Midway are not members of the SWA.
You pose the following six questions regarding these facts:
Do the excess funds belong only to Hot Spring County or are the other members entitled to a portion of the excess funds based upon some formula such as a comparison of their per-capita distribution and Hot Spring County's distribution in years when an excess occurred?
Do other contributors that contributed during the time the excess was created also have any right of return of payment? This would include specifically Midway and Magnet Cove. If so, under what formula would the return of their excess contribution be determined?
If a municipal member of the SWA decided to withdraw from membership in the SWA, what rights would that member have to the funds and assets of the SWA? Specifically, would the withdrawing municipality be entitled to part of the bank accounts, allocated revenue, assets, and property of the SWA? For instance, if Donaldson constituted two percent (2%) of the SWA's membership by population, and if Donaldson withdrew, would Donaldson also have the right to take two percent (2%) of the assets of the SWA upon withdrawal? If not, what rights does Donaldson have to any assets upon withdrawal?
If a withdrawing member is entitled to a portion of the assets, and an agreement cannot be reached, what process would be used to allocate assets? For instance, would it be similar to a dissolution of a corporation or some different process?
If a withdrawing member has the right to obtain part of the assets, what input, if any would the SWA board have on the assets to be distributed to the withdrawing member?
If both municipal members withdrew, could the SWA continue to operate as a separate "public body and body corporate and politic" or would it be subject to the provisions of A.C.A. § 14-14 [sic] as a county board or commission?
You state that "[a]t this time there is no litigation regarding membership of the rights of SWA members in Hot Spring County."
RESPONSE
Your first two questions appear to address the excess funds addressed in the litigation. If so, the judicial decisions referenced above control the disposition of the funds. The circuit court ruled that the County was entitled to transfer certain excess SWA funds to the County. The Arkansas Court of Appeals affirmed the ruling that the excess funds were "available for the County's use." The Arkansas Court of Appeals denied rehearing and the Arkansas Supreme Court also denied review. There is no indication in these rulings that any portion the excess funds should be apportioned among the municipalities. With regard to your third question, the applicable statute provides that participating members may withdraw, but "[a]ll contractual rights acquired and obligations incurred while the municipality or county was a member shall remain in full force and effect." I cannot conclude, in light of this language, that a withdrawing municipality is entitled to any distribution of assets upon withdrawal. Your fourth and fifth questions appear to be moot in light of the answer to your third question. Finally, in response to your sixth question, although the issue is not clearly addressed by the statutory scheme, in my opinion the SWA could continue to operate as such even if the remaining municipal members withdrew.
Question 1 — Do the excess funds belong only to Hot Spring County or are the other members entitled to a portion of the excess funds based upon some formula such as a comparison of their per-capita distribution and Hot Spring County's distribution in years when an excess occurred?
Question 2 — Do other contributors that contributed during the time the excess was created also have any right of return of payment? This would include specifically Midway and Magnet Cove. If so, under what formula would the return of their excess contribution be determined?
Your first two questions appear to inquire only about the excess funds that were the subject of the litigation and not to any future excess funds. The litigation involved funds raised by a one cent sales tax, the ballot title of which provided in relevant part as follows:
a. The entire per capita share of Hot Spring County's sales and use tax shall be deposited into the Hot Spring County General Fund as the same may be received from the State Treasurer and thereafter appropriated by the Quorum Court for the following designated purposes:
(i) 95% shall be appropriated annually to pay the existing indebtedness of SWA to FmHA and Bank of Malvern, Malvern, Arkansas, and the annual operation and maintenance of SWA and upon the retirement of the debt to FmHA and Bank of Malvern, Malvern, Arkansas, these revenues may be appropriated by the Quorum Court:
 (A) FIRST: To fund the annual operation and maintenance of SWA, and;
 (B) SECOND: To fund other general needs of the County as authorized by law.
(ii) 5% shall be appropriated into a reserve fund to be used for the purchase, acquisition and/or construction of landfills and recycling facilities, all for the purpose of solid waste disposal and/or recycling.
As the Court of Appeals noted, the debt referred to above was retired in 1993, and "[b]eginning in 1994, the sales-tax proceeds . . . were made available to the SWA for annual operation and maintenance. . . . Between 1994 and 2003, the SWA's expenditures . . . were as a rule, considerably less than the amount of tax proceeds available. As a result, unspent money began to accumulate, and by December 2003, that amount totaled $3,440.339.23." Hot Spring County Solid Waste Authority v. Hot Spring County, 96 Ark. App. 230, 233, ___ S.W.2d ___ (2006), rehearing denied (Ark.App. Nov. 30, 2006), and review denied (Ark.Sup.Ct. December 7, 2006). This amount became the "excess funds" that were the subject of the ensuing litigation between the SWA and the County.
The judicial orders in question will therefore control the answers to your first two questions. As a member of the executive branch of state government, it is not appropriate for me to issue official opinions second-guessing decisions made by the judicial branch or interpreting them for the benefit of non-state parties. See, e.g., Ops. Att'y Gen.2006-140; 2006-128; 2002-347; and 94-324. I can only refer you to the pertinent language in those decisions.
The circuit court in the case just-mentioned ruled that for certain described years (1993 through 2003), "[t]he County was entitled to transfer the excess funds of $3,440.339.23 to the County Jail Fund. . ." It also held that "[f]unds collected for the years 2004 and 2005 are the funds of the SWA to be rebudgeted and if there is an excess of funds, the excess shall be paid to the County." Hot Spring County v. Hot Spring County Solid Waste Authority, (No. CV-2003-279-2, Hot Spring County Cir. Ct. Order of Nov. 3, 2005) at 10 (hereafter referred to as "Circuit Court order"). The Court of Appeals affirmed, finding that the "trial court's declaration that the $3,440,339.23 was available for the County's use in not clearly erroneous." Hot Spring County Solid Waste Authority v. Hot Spring County, supra at 237.[1]
These judicial decisions do not mention any potential share of the excess funds as being apportionable to the participating municipalities. The affected municipalities were apparently not made parties to the litigation. See Circuit Court order, supra at 3, Finding No. 8 ("Neither the City of Donaldson nor the City of Friendship are parties to this litigation nor have they filed any pleadings in this case"). They thus did not raise any arguments as to the court's disposition of the funds in the SWA account.[2]
As my predecessor stated in declining to issue an opinion on this matter while the litigation was still pending:
I appreciate that the SWA member municipalities did not participate as parties in the above referenced litigation. However, the court did rule as to the appropriate disposition of the "excess" funds referenced in your request, and I am neither authorized nor inclined to look behind the findings made by a trier of fact in its judicial capacity. Local counsel for the SWA member municipalities would be best situated to render advice as to what recourse, if any, exists at this point.
Op. Att'y Gen. 2006-198 at 2.
Question 3 — If a municipal member of the SWA decided to withdraw from membership in the SWA, what rights would that member have to the funds and assets of the SWA? Specifically, would the withdrawing municipality be entitled to part of the bank accounts, allocated revenue, assets, and property of the SWA? For instance, if Donaldson constituted two percent (2%) of the SWA's membership by population, and if Donaldson withdrew, would Donaldson also have the right to take two percent (2%) of the assets of the SWA upon withdrawal? If not, what rights does Donaldson have to any assets upon withdrawal?
The pertinent statutory subsection in this regard is A.C.A. §14-233-106(b), which provides as follows:
(b)(1) Any municipality, county, or district may withdraw from a sanitation authority at any time without the consent of the other members of the authority. All contractual rights acquired and obligations incurred while the municipality, county, or district was a member shall remain in full force and effect.
(2) The withdrawal shall become effective upon the adoption of an ordinance by the withdrawing municipality or county or, in the case of a district, the adoption of a resolution, and the filing of the ordinance or resolution with the Secretary of State together with an amendment signed by the mayor of the withdrawing municipality, the county judge of the withdrawing county, or the presiding officer of a district in the manner provided in § 14-233-105, whereupon the Secretary of State shall make and issue an amendment to the certificate of incorporation setting forth the then-current names of the member municipalities, counties, and districts.
Although I have not found any judicial interpretations of this subsection, in my opinion the emphasized language above indicates that a withdrawing member is not entitled to any distribution of the assets upon the withdrawal. In my opinion the language above indicates that the withdrawing member must continue to honor any obligations incurred while a member and concomitantly, is entitled to enforce any contractual rights accrued during the same period. This language may therefore contemplate a "phasing out" or gradual transition period where a withdrawing member must continue to abide by existing contractual obligations and may reap the benefit of existing contractual provisions, but where it will not be assuming new obligations or rights. It does not appear that this subsection envisions any type of "dissolution" of the sanitation authority upon withdrawal of one or less than all of its members. Dissolution of a sanitation authority is addressed in a different statute, A.C.A. § 14-233-121, which provides that:
(a) Whenever the member municipalities and counties shall by ordinance determine that the purposes for which the sanitation authority was formed have been substantially fulfilled and that all bonds issued and all other obligations incurred by the authority have been fully paid or satisfied, the member municipalities and counties may by ordinance declare the authority to be dissolved.
(b) On the effective date of the dissolution, the title to all funds and other property owned by the authority at the time of the dissolution shall vest in all or any number of the member municipalities and counties in the manner provided in the ordinances declaring the dissolution.
(c) Copies of all the ordinances, certified by the respective clerks of the member municipalities and counties, shall be filed with the Secretary of State.
(Emphasis added).
This procedure contemplates the concurrence of all members in order to dissolve the authority. Only then may assets be distributed as provided in the dissolution ordinances. That does not appear to be the situation you posit in your third question.
Question 4 — If a withdrawing member is entitled to a portion of the assets, and an agreement cannot be reached, what process would be used to allocate assets? For instance, would it be similar to a dissolution of a corporation or some different process?
It is unnecessary to answer this question in light of my response to your third question.
Question 5 — If a withdrawing member has the right to obtain part of the assets, what input, if any would the SWA board have on the assets to be distributed to the withdrawing member?
It is unnecessary to answer this question in light of my response to your third question.
Question 6 — If both municipal members withdrew, could the SWA continue to operate as a separate "public body and body corporate and politic" or would it be subject to the provisions of A.C.A. § 14-14 [sic] as a county board or commission?
The applicable statutory scheme, A.C.A. § 14-233-101 to-122, (the "Joint County and Municipal Solid Waste Disposal Act"), does not address this question. The issue arises in the context of your question because if both municipal members withdraw, this would leave the County as the sole member of a sanitation authority organized under a subchapter that provides for "joint" county and municipal solid waste disposal.
The applicable provision authorizing the creation of such authorities states that: "Any two (2) or more municipalities, any two (2) or more counties, or any one (1) or more municipalities together with any one (1) or more counties are authorized to create and become members of a sanitation authority as prescribed in this subchapter." A.C.A. §14-233-104(a)(1). The original 1979 law was amended in 1991, however, to also allow "[a]ny first-class city, second-class city, or incorporated town" to "create a sanitation authority under this chapter" and provides that "such sanitation authority shall have the same powers as other sanitation authorities vested under this chapter." A.C.A. §14-233-104(a)(2). See also Acts 1991, No. 962. No similar authority is provided to counties acting alone.
You therefore ask whether a sanitation authority with only a county as a member would be subject to the provisions of "A.C.A. § 14-14." I assume this reference is meant to be to A.C.A. § 14-14-705 (Repl. 1998), which addresses the composition and powers of county advisory or administrative boards.
The statutes do not provide a clear answer to this question and as a consequence I cannot accurately predict its outcome. I cannot conclude, however, in light of the subchapter's silence in this regard, that the SWA would automatically become a county administrative board in the event both municipal members withdraw. Two factors lend support to this conclusion.
First, it is notable, in my opinion, that the authorizing language as to the creation of sanitation authorities under A.C.A. § 14-233-104
speaks only in terms of the initial creation and not to any subsequent make-up of the authority by additions or withdrawal of members. See A.C.A. § 14-233-104(a)(1) (stating that the enumerated combinations of public entities are "authorized to create and become members of a sanitation authority." (Emphasis added). The Hot Spring County Solid Waste Authority was apparently first created in compliance with this requirement. See Circuit Court order at 4-5, findings # 17 and 18 (noting that the SWA was originally incorporated with Hot Spring County and the City of Friendship as members). Section 14-233-106 of the applicable subchapter clearly provides for the subsequent addition or withdrawal of members and does not contain any express prohibition against all municipal members withdrawing, leaving only one county as a member.
Second, as noted above in response to your third question, existing contractual obligations and rights of withdrawing members remain in full force and effect after the withdrawal. This fact lends some remaining "joint" character to the enterprise even after the withdrawal. Again, however, this issue is not clearly addressed in the applicable statutes and could benefit from legislative clarification.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The Court of Appeals decision does not appear to address any excess funds from the years 2004 and 2005.
[2] The language of the applicable ballot title dictated the usage of "[t]he entire per capita share of Hot Spring County's sales and use tax . . ." (Emphasis added). There were apparently no arguments made in the litigation as to whether this language, as a factual, legal, or constitutional matter, also dictated the usage of the municipalities per capita share. *Page 1